**JANOVE PLLC**
Raphael Janove (SBN 361193)
115 Broadway, 5th Fl.
New York, NY 10006
Tel: (646) 347-3940
raphael@janove.law

Liana Vitale (SBN 348772)
979 Osos St., Ste A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

MADISON BEIKIRCH and CRYSTLE CAIGOY, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

OGORGEOUS INC., a Texas corporation, and REDO TECH, INC., a Delaware corporation,

Defendants.

Case No. 26-cv-597

**CLASS ACTION COMPLAINT**
**DEMAND FOR JURY TRIAL**

1. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.
2. Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.
3. Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code. § 1750 et seq.
4. Violation of New York's General Business Law ("GBL"), NY Gen. Bus. L. § § 349–350

5. Violation of Utah's Consumer Sales Practices Act ("CSPA"), Utah Code §§ 13–11–1 *et seq*
6. Unjust Enrichment

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (see ¶¶ 10-11, infra.). It also has personal jurisdiction over oGorgeous Inc. ("Popflex") because California is the jurisdiction where Popflex maintains its principal place of business and conducts substantial business and is where a substantial part of the acts and omissions that Plaintiff Caigoy complains of occurred.

Plaintiff Caigoy and Plaintiff Beikirch, on behalf of themselves and others similarly situated, on knowledge as to their own actions, the investigation of Plaintiffs' counsel, and otherwise upon information and belief, allege against Defendants Redo and Popflex as follows:

## NATURE OF THE ACTION

1. Defendant oGorgeous Inc. ("Popflex") sells activewear on the internet through its website popflexactive.com.

2. To allay customer concerns that items ordered from the Popflex website may not fit, Popflex offers free returns and purportedly unlimited exchanges.

3. However, unbeknownst to customers like Plaintiffs, consumers actually pay for these "free" returns and exchanges through a hidden fee.

4. Specifically, Popflex automatically includes a fee of $2.18 for "Checkout+ Unlimited Returns or Exchanges" ("Checkout+") in every order.

5. Defendant Redo Tech, Inc. ("Redo") then facilitates and manages customers' supposedly "free" returns and exchanges for Popflex.

6. Instead of offering customers the option to opt-in to Checkout+ at their discretion, Defendants manipulate customers into purchasing it. They do this by surreptitiously adding the fee to every purchase and then using various manipulative tactics to hide it from consumers and make them believe it is required rather than optional.[1]

[1] As detailed below, many of the tactics employed by Defendants are common "dark patterns" known to deceive and manipulate customers. *See* FTC Staff Report, *Bringing Dark Patterns to Light* (Sept. 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

7. Further, Checkout+ is a junk fee; it provides little to no value to customers because Popflex already allows for returns and exchanges so long as customers pay for the shipping.

8. Nonetheless, Popflex presents Checkout+ in a way that makes customers believe they cannot return or exchange items if they remove it (assuming they even realize it is removeable and can figure out how to remove it, both unlikely given the way the fee is presented on Popflex's checkout screens).

9. Defendants' practices are deceptive and unlawful. Plaintiff Beirkirch and Plaintiff Caigoy therefore bring this class action asserting claims on behalf of themselves and all those similarly situated for violations of the Unfair Competition Law, California Business & Professions Code, §§ 17200, et seq. ("UCL"); the False Advertising Law, Cal. Bus. & Prof. Code, §§ 17500, et seq. ("FAL"); the California Consumers Legal Remedies Act, Cal. Civ. Code, §§1750 et seq., ("CLRA"); New York's General Business Law ("GBL") §§ 349-350; Utah's Consumer Sales Practices Act ("CSPA"), Utah Code §§ 13–11–1 et seq; and for unjust enrichment.

**JURISDICTION**

10. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than both Redo Tech, Inc. and oGorgeous Inc.

11. This Court has personal jurisdiction over oGorgeous Inc. because it conducts substantial business in this District, and a substantial part of the acts and omissions that Plaintiffs complain of occurred in this District.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

## VENUE

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) & (b)(2) because Defendant Caigoy resides in this district and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

13. Plaintiff Madison Beirkirch is domiciled in Rochester, NY. Ms. Beirkirch has paid for Checkout+ on at least two of her Popflex orders, one placed on March 14, 2025, and one on June 11, 2025. Ms. Beirkirch purchased Checkout+ because she was deceived by the presentation of the fee and thought that she would not be able to return or exchange her items without purchasing Checkout+. Had she known that just paying for shipping was an option for returns, she would not have paid the Checkout+ fee on the off chance that she might need to return something, especially for single items orders—where the odds of a return are lower, but the Checkout+ fee remains the same. In short, Ms. Beirkirch would not have purchased the protection or would have paid less for it if she had known about Popflex's deceptive presentation, which she reasonably relied on.

14. Plaintiff Crystle Caigoy is domiciled in Mission Viejo, California. Ms. Caigoy has paid for Checkout+ on at least five of her Popflex orders, placed on July 4, 2025; August 2, 2025; August 7, 2025; August 29, 2025; and August 30, 2025. Ms. Caigoy initially purchased Checkout+ because she did not notice it had been added to her order. Once she noticed it was there, she continued to purchase it on subsequent orders because she was deceived by the presentation of the fee. Ms. Caigoy thought that she would not be able to return or exchange her items without purchasing Checkout+. In many cases, Ms. Caigoy would not have purchased Checkout+ or would have paid less for it if she had realized it was there or if she had known about Popflex's deceptive presentation, which she reasonably relied on.

15. Defendant Redo Tech, Inc. is a Delaware corporation headquartered in Draper, Utah and incorporated in Delaware. Redo Tech, Inc. provides the "Checkout+

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Unlimited Returns or Exchanges" services for Popflex by paying for the return labels, helping to facilitate returns and exchanges, and managing the portal through which customers submit returns and exchanges. Upon information and believe, Redo dictated and facilitated the deceptive checkout flow used by Popflex and others, to increase the likelihood that customers would purchase Checkout+ and pay Redo's fees.

16. Defendant oGorgeous Inc., d/b/a Popflex is a Texas corporation with its principal place of business at 3125 Osgood Court, Fremont, California 94539.[2] Popflex is an online merchant that designs, makes, markets, and sells athletic clothes for women. Popflex uses deceptive and manipulative tactics in their online checkout flow to trick customers into paying for Redo Tech Inc.'s "Checkout+ Unlimited Returns or Exchanges".

**FACTS**

17. Customers like Ms. Beirkirch and Ms. Caigoy visit Popflex's website to buy stylish athletic wear. But, like many others, they were manipulated into paying unwarranted junk fees with their orders.

18. As noted above, on all orders, without asking customers whether they want it, Defendant Popflex automatically adds a fee for "Checkout+ Unlimited Returns or Exchanges" ("Checkout+"), which allows customers to make "as many exchanges as needed to achieve their perfect fit" (provided they are made "within 30 days of purchase").

19. Defendant Redo Tech, Inc. ("Redo") facilitates and manages these returns and exchanges.

20. Checkout+ costs an additional $2.18.

21. Defendants use several deceptive tactics to manipulate customers into paying for Checkout+.

[2] https://www.popflexactive.com/pages/terms-of-service

22. First, Defendants hide the fee from customers by automatically adding Checkout+ to customers' orders without their knowledge or consent.

23. This is a deceptive business tactic known as a "sneak-into-basket" fee, which the Federal Trade Commission (FTC) has identified as a "dark pattern," *i.e.* a "design practice[] that trick[s] or manipulate[s] users into making choices they would not otherwise have made."[3]

24. Next, Defendants design their checkout screens to make the Checkout+ fee hard to notice and appear unremovable.

25. Thus, if a customer notices that the Checkout+ fee has been added even though the customer did not request the service, Defendants' other deceptive tactics trick customers into believing that it is required with purchase.

26. The checkout screen in the mobile application even includes a toggle button that appears to, but does not actually, remove the Checkout+ fee.

27. Further, the purported benefit provided by Checkout+ is no benefit at all, because Popflex already allows customers to make returns and exchanges, provided they pay for shipping. Defendants' marketing misleads consumers to believe that Checkout+ is required to make returns and exchanges.

28. These deceptive practices interfere with consumers' autonomy and ability to make informed choices about their purchases, constituting unfair business practices in violation of California, New York, and Utah state laws.

## I. Customers' Checkout Experience on Popflex is Manipulative and Deceptive.

29. Customers can purchase items from Popflex on their computer, mobile device, or from the Popflex app. All three platforms intentionally manipulate consumers into paying for Checkout+.

[3] *See* FTC Staff Report, *Bringing Dark Patterns to Light* (Sept. 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf



JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

### A. Online Checkout Process

30. When shopping online using a computer or mobile device, Defendants manipulate consumers into paying for Checkout+ by automatically adding it to the cart and by making the fee appear mandatory.

31. First, Defendants automatically add Checkout+ to customers' carts without their knowledge or consent. Shown below is a cart that includes two items. Without any action by the customer, the Checkout+ fee is added to the order, but it does not appear in the cart, which Popflex misrepresents as containing only "(2)" items. Instead, the added fee is shown in extra small text at the bottom of the screen, *below* the "Subtotal," which reads, "Checkout+ Unlimited Returns or Exchanges $2.18"[4]:




[4] The cart shown here is from the Popflex website as seen on a computer. The Popflex website as seen on a mobile device is materially the same.





JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

32. Adding fees to a customer's cart without authorization is deceptive and psychologically manipulative.

33. Presenting the fee in tiny font below the subtotal, where customers are unlikely to see it or understand its purpose, compounds the deception.

34. This is a dark pattern that the FTC calls a "sneak-into-basket" fee. The "sneak-into-basket" tactic manipulates consumers' decision making in multiple ways.[5]

35. First, because customers expect only items they have affirmatively chosen to be included in the cart, many customers do not look for or notice that Checkout+ has been surreptitiously added to the cart.

36. This is especially true because Defendants designed the webpage display so the fee is inconspicuous. The Checkout+ fee is not listed as an item in the cart, instead it appears in smaller text in a lower area of the screen outside the cart, where it blends in with the background.

37. Second, if customers do realize that the fee has been added, Defendants exploit well-known psychological tactics based on research showing that people are less inclined to remove items than to add them in the first place.

38. This is an application of the "endowment effect," a principle of behavioral psychology which says, "any tactic that makes us feel a sense of psychological ownership over a product can encourage us to spend more on it."[6]

39. The endowment effect can be explained by humans' aversion to loss: "Because of loss aversion, when we're faced with making a decision, we tend to focus more on what we lose than on what we gain. As a result, in general, we are biased to maintain the status quo, rather than shake things up and risk sustaining losses."[7]

40. As relevant here, by automatically adding Checkout+ to customers' carts, Defendants exploit the endowment effect by making consumers feel a sense of

[5] Bringing Dark Patters to Light, 22.
[6] https://thedecisionlab.com/biases/endowment-effect
[7] https://thedecisionlab.com/biases/endowment-effect

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

ownership over the fee. As such, they are less inclined to remove the fee—if they even notice it—because they do not want to risk losing something.

41. In short, by "sneaking" Checkout+ "into [the] basket" Defendants manipulate consumers into making decisions that they would not have made otherwise, unfairly benefitting Defendants.

42. Defendants then use additional deceptive tactics to deter consumers from removing the Checkout+ fee.

43. The only way to remove Checkout+ from an online order is when viewing the cart before checkout.

44. At this stage in their purchase, customers are shown two options to complete the purchase. Their first option is to select the big black action button labeled "Checkout+, which takes the customer to the checkout screen with Checkout+ still in their cart. Based on the website design, most customers will infer that this button is the only way to proceed to checkout.

45. Notably, using the label "Checkout+" helps Defendants to conceal the added charge because most users will not focus on or perceive the addition of a small "+" symbol at the end of the word Checkout. Instead, Defendants' checkout process causes users to believe that the Checkout+ action button is a normal "Checkout" button, and not an authorization to charge extra fees that were not added by the user.

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

46. Alternatively, if they see it, customers can remove Checkout+ by clicking the small hyperlink that blends in with the background that says, "Continue without checkout+," as shown below:




47. This link does not draw customers' attention and does not clearly indicate that it removes an unwanted charge from the order, making it unlikely that users will see or realize it is an alternate way to checkout.

48. In fact, the presentation of the "Continue without checkout+" option suggests that it is a hyperlink to terms or an informational page, rather than an action button. This is especially so given the contrast with the black button that advances the checkout process without removing the Checkout+ fee

49. Further, the phrasing "continue without checkout+," confusingly suggests that the link is not for checking out, so that customers who wish to checkout (rather than "continue without checking out") are less likely to click it.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

50. By aggressively emphasizing the checkout button that keeps the fee in the cart while simultaneously hiding the nature and existence of the "Continue without checkout+" button at the bottom of the screen, Defendants trick customers into paying the fee, believing that the Checkout+ button is the only way to complete the purchase.

51. In the FTC's lingo, Defendants employ a dark pattern known as 'misdirection,' or drawing consumers' attention to one design element in order to distract them from another.[8]

52. Critically, once customers click the big black action button and go to the checkout page, there is no way to remove the fee from the order. As a result, Checkout+ does not appear optional. Instead, it deceptively appears as a mandatory part of the purchase.

**B. Mobile App Checkout Process**

53. On Popflex's mobile app, Defendants use the same dark patterns as on the computer—the "sneak-into-basket" tactic and "misdirection", but the deception is even more egregious.

54. When checking out on the mobile app, Defendants show customers a toggle button that falsely appears to allow them to remove Checkout+ from their orders. When a user first views the cart, the toggle next to the "Unlimited Returns or Exchanges" defaults to "on," as shown below (the red box highlighting the relevant portion of the screenshot has been added for ease of viewing here):

[8] Bringing Dark Patterns to Light, 23.

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

55. As discussed above, automatically adding items that were not chosen by customers to the cart is deceptive and manipulative.

56. The Checkout+ toggle button in the mobile app is slightly easier to see than the webpage mechanism for removing Checkout+ (described above).

57. However, even if customers notice it and turn the toggle off, Defendants do not remove the Checkout+ fee from customers' orders.

58. So, not only do Defendants employ the "sneak-into-basket" tactic by stealthily adding Checkout+ to the cart, but they do so even after customers explicitly revoke consent to be charged for Checkout+.

59. Once at checkout, Defendants employ "misdirection" to keep consumers from noticing that Checkout+ has been added to their order, even if they tried to remove it.

60. On the checkout page, there is no obvious indication that Checkout+ has been added to the customers' cart. If a consumer turned the toggle off in the previous page of the checkout flow, there is no sign that the customer's preference against Checkout+ has been overridden.

61. The only ways a customer could find out that Checkout+ has been added to their order (even against their express wishes) are in drop-down menus that are not displayed unless users notice the small down carets indicating their existence and affirmatively click on them.

62. The first such drop-down menu is next to the "Order summary" at the very beginning of the checkout process, shown inside the red box on the left. The second is at the very end of the checkout process, next to the total dollar amount to be charged, as shown inside the red box on the right (the red boxes are not on the original display, but were added to help the reader locate these inconspicuous drop-down menus):

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 | 115 Broadway, 5th Fl. New York, NY 10006 | 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC







63. If customers click on the small down carets indicating drop-down menus, the menus will expand and then customers can see that Checkout+ is included in their orders. However, Checkout+ cannot be removed from the drop-down menu at the top of the checkout screen (shown above on the left).

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

64. Instead, the only way to remove Checkout+ is by clicking the tiny caret that opens a drop-down menu at the bottom of the checkout screen (shown above on the right) and then unchecking the box next to "Unlimited Returns or Exchanges for $2.18":



JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

65. By hiding this information in drop-down menus, Defendants conceal from customers that they have added Checkout+ to their carts. Further, by placing the drop-down caret around distracting design elements, such as prompts to enter delivery information and to pay for the order, Defendants make it hard for customers to notice the drop-down option—again using the dark pattern known as 'misdirection,' or drawing consumers' attention to one design element in order to distract them from another.[9]

66. By hiding the fee in drop-down menus and diverting customers' attention to other areas of the checkout flow, Defendants hope that customers will not realize that the Checkout+ fee has been added to their orders without their consent and, thus, will end up paying for it, even if they don't want it.

67. And Defendants again deploy psychological tactics designed to discourage users from removing the fee—pre-checking the box so that customers

[9] Bringing Dark Patterns to Light, 23.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

have to affirmatively opt-out of the purchase, rather than asking consumers whether they want to include it:




68. As previously explained, a pre-checked box manipulates consumers by triggering the endowment effect and making them feel a sense of ownership over Checkout+, and related aversion to losing it, making them less inclined to remove the fee.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

## II. Checkout+ Is Deceptively Presented As Non-Optional.

69. Defendants hope that customers will not notice Checkout+ in their carts. But, for those who do notice, Defendants try to further deceive customers into believing the fee is mandatory.

70. For one, as discussed above, Defendants designed their checkout flows so that the Checkout+ fee is difficult to remove.

71. In the online checkout process, customers can only remove Checkout+ if they notice it in their cart preview. Once they go to the checkout page, there is no way to remove it.

72. In the mobile checkout process, the toggle in the cart preview that seemingly adds or removes the Checkout+ from the order actually has no effect; even when the toggle appears to be flipped in the off position, Checkout+ is still added to customers' orders. And customers cannot remove the Checkout+ fee from the next page in the checkout flow unless they uncheck the box that is hidden behind a drop-down menu and placed near distracting design features.

73. By hiding the removal process for this fee—and, worse, making decoy removal processes to confuse customers—Defendants make Checkout+ appear to be required with purchase, rather than an optional service that can be removed at the customers' discretion.

## III. Checkout+ Is Deceptively Presented As Offering Distinct Benefits, But Actually Provides Minimal, If Any, Value to Customers.

74. Additionally, Defendants deceptively label Checkout+ by representing it as providing customers with unique benefits. In reality, Popflex already provides most of the benefits of Checkout+.

75. Throughout the checkout process, Checkout+ is advertised as providing "unlimited returns or exchanges."

76. This presentation led both Plaintiffs—and, on information and belief, many other customers—to think that they were required to purchase Checkout+ to be

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

able to return or exchange their items. Essentially, Plaintiffs thought that without Checkout+, their purchases were "final sale." (As noted above, Plaintiff Caigoy did not even notice the fee on her first couple of orders.)

77. In fact, Popflex customers are allowed to return or exchange items (other than final sale items) without Checkout+—the only difference is they have to pay for a return label instead of getting one for "free" through the purchase of Checkout+.[10]

78. As Popflex's return policy states, "If you do not select Checkout+, you will purchase a return label inside the portal."[11]

79. PopFlex's exchange policy is even more generous—allowing two completely free exchanges for the same item in a different size, and requiring only that the user pay for a return label to make other exchanges: "If you opt out of Checkout+, we offer two complimentary U.S. even exchanges within 30 days of purchase. Should you need more than two even exchanges, or if you select an item that is a different color or product as your exchange, you can purchase a label inside the portal."[12]

80. In other words, Defendants describe Checkout+ as providing "unlimited returns or exchanges," but Popflex's default policies already allow customers to return or exchange their items—so the only marginal benefit of Checkout + is a pre-paid shipping label if the customer chooses to make a return or non-equivalent exchange.

81. Further, while Checkout+ is advertised as providing "unlimited returns or exchanges," in fact it only allows "unlimited exchanges" for a short period of time: "within 30 days of purchase."[13] The number of exchanges that can reasonably be completed in the 30 days after purchase is unlikely to be much higher than two.

---

[10] https://popflex.zendesk.com/hc/en-us/articles/4927256450331-What-is-your-return-policy

[11] https://popflex.zendesk.com/hc/en-us/articles/4927256450331-What-is-your-return-policy

[12] https://popflex.zendesk.com/hc/en-us/articles/4927256450331-What-is-your-return-policy

[13] https://popflex.zendesk.com/hc/en-us/articles/6405759953819-Start-Your-Exchange-or-Return-Here

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

82. So, in most ways, Checkout+ is duplicative of Popflex's own return and exchange policies. However, many customers do not know this because Popflex hides its return and exchange policies behind many hyperlinks and dropdown menus—making them extremely difficult to find—and falsely presents Checkout+ as the only way to ensure the option to return or exchange items.

83. By not obviously disclosing this information to customers, Defendants employ a dark pattern known as "hidden information"—when companies conceal material information from their customers to influence their decision making.

84. Concealing their return and exchange policies influences consumers by making it difficult for them to differentiate between the services Popflex already provides and the minor additional benefits (*i.e.* a prepaid shipping label) that are offered by Checkout+.

85. If Popflex disclosed its return and exchange policies during the checkout process, Plaintiffs would not have purchased Checkout+ on certain orders or would have paid less for it.

86. In other words, due to dark patterns, many consumers pay for Checkout+ because they think it is mandatory or that it provides unique benefits not otherwise available to them. Absent these manipulative tactics, Plaintiffs—and many other customers—would not have paid for Checkout+.

**IV. Checkout+ Renders Popflex's Free Exchange Policy False.**

87. Checkout+ provides only marginal benefits to the consumer while simultaneously rendering Popflex's description of its default return and exchange policies false and misleading.

88. That is, the "free" exchanges offered by Popflex are not, in fact, free exchanges at all, because Defendants trick customers into paying for them with Checkout+.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

89. In other words, for customers who do not notice the fee or who pay for it because they are deceived by dark patterns, the first two exchanges are not free, thus making Popflex's free exchange guarantee false and misleading.

**V. Checkout+ Is a Junk Fee That Violates Federal Law, Federal Agency Guidelines, and State Law.**

90. Checkout+ is the kind of junk fee that state and federal governments have recently banned.

91. The White House has defined junk fees as

> unnecessary, unavoidable, or surprise charges that inflate prices while adding little to no value. These junk fees, which are often not disclosed upfront and only revealed after a consumer has decided to buy something, obscure true prices and dilute the forces of market competition that are the bedrock of the U.S economy.[14]

92. Defendants' Checkout+ is certainly a junk fee under this definition. Checkout+ is a surprise fee added to customers' carts without their knowledge or consent, and this fee adds little value to the return and exchange policy already offered by Popflex. Defendants do not clearly disclose the Checkout+ fee and, in fact, actively try to hide it from consumers.

93. These fees are harmful to consumers. The White House estimated that, collectively, consumers pay *billions of dollars* every year in junk fees. Removing them "giv[es] families some extra breathing room and mak[es] our economy more competitive."[15]

94. Moreover, hidden fees like the ones used by Defendants have been a problem for years. In 2010, Congress took action against online merchants' deceptive

[14] https://bidenwhitehouse.archives.gov/wp-content/uploads/2023/03/WH-Junk-Fees-Guide-for-States.pdf

[15] https://bidenwhitehouse.archives.gov/wp-content/uploads/2023/03/WH-Junk-Fees-Guide-for-States.pdf

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

tactics by passing the Restore Online Shoppers' Confidence Act, 15 U.S.C. § § 8401–8405.

95. This Act makes it illegal to charge consumers for items sold by "a negative option feature" unless terms of the transaction are clearly disclosed and consumers explicitly consent to the transaction.[16]

96. A negative option feature is when "the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."[17]

97. In other words, Defendants use of a "negative option feature" to inconspicuously add Checkout+ to customers' carts and then charge them for it based on their failure to remove it from their order is illegal as a matter of federal law.

98. Although Congress and federal agencies have taken steps to combat deceptive junk fees such as Checkout+, they remain pervasive in online marketplaces. As such, the White House also called on states to regulate this issue, pointing out that "states have local and specialized knowledge of junk fees arising within their jurisdictions and affecting their citizens."[18]

99. California is one of the states that took action to address junk fees within its jurisdiction and affecting its citizens.

100. In particular, on July 1, 2024, California amended the Consumer Legal Remedies Act to address junk fees. This amendment was "'intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service.'"[19]

101. The state legislature passed this law because

> the price a Californian sees should be the price they pay…. Advertising or listing a price that is less than what a consumer will eventually be charged is a form of deceptive

[16] https://www.congress.gov/111/plaws/publ345/PLAW-111publ345.pdf
[17] https://www.ecfr.gov/current/title-16/chapter-I/subchapter-C/part-310
[18] https://bidenwhitehouse.archives.gov/wp-content/uploads/2023/03/WH-Junk-Fees-Guide-for-States.pdf
[19] https://oag.ca.gov/hiddenfees

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

> advertising that also violates existing state and federal law….[20]

102. Checkout+ is a junk fee. Defendants' presentation and implementation of Checkout+ violates state and federal laws, unjustly enriching these companies at consumers' expense.

## VI. Defendant Redo Promotes and Offers its Checkout+ Service to Numerous Online Merchants.

103. Redo offers various services that it claims help online marketplaces run more smoothly, including helping companies manage returns and exchanges ("Return Services").

104. According to Redo, its Return Services provide a user-friendly return and exchange portal where customers can manage their orders.

105. Redo also helps to facilitate returns and exchanges by providing the customers with pre-paid shipping labels.

106. Redo markets its product to merchants as a way to increase revenue and reduce customer services expenses.

107. According to Redo's website, their Return Services not only increase merchants' revenue, but they come at no cost to the merchant.[21]

108. Redo purports that its products increase merchants' revenue by "reduc[ing] operational expenses with free software" and by "increas[ing] exchange and conversion rates."[22]

109. In other words, Redo's software reduces the number of customer support staff needed to process returns and exchanges. Additionally, Redo's product encourages customers to exchange items rather than return them, allowing merchants to retain significant portions of revenue.[23]

---

[20] https://oag.ca.gov/hiddenfees
[21] https://redo.com/en/pricing#w-tabs-0-data-w-pane-0
[22] https://redo.com/en/products/returns
[23] https://redo.com/en/products/returns

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

110. Moreover, "Redo covers the cost of [customers'] return labels," providing customers with free returns at no cost to the merchant.[24]

111. But ultimately, it is the consumer who—often unknowingly—carries the economic burden of these Return Services.

112. As discussed throughout this complaint, companies such as Popflex charge customers for Redo's Return Services without their consent. For example, Popflex automatically adds a fee of $2.18 to customers' carts for Redo's "Checkout+ Unlimited Returns or Exchanges" ("Checkout+"). Moreover, Popflex ensures this fee is inconspicuous and hard to remove, so customers are largely unaware they are paying it.

113. On information and belief, Redo instructs merchants like Popflex to display the Checkout+ in this manipulative way and facilitates the adoption of the deceptive design tactics described above.

114. According to Redo, over 2,500 businesses use their platform. Many of these online merchants use similar styles of deceptive check-out flows to charge customers for Redo's services without their consent, including online merchants such as Alphalete Athletics, Lashify, Nike Strength, GLD, Cozy Earth, Primo Golf Apparel, Elwood Clothing, Lisa Says Gah Clothing, Cynthia Rowley, Paul Fredrick, &Collar, MoCo Boutique, The RusticC Boutique, Made By Mary, Groove Life, Baseball Lifestyle 101, Runway Rogue Beauty, PMD Beauty, Spartan Race Shop, VICIS, Mixhers, CPAP.com, Greater Good, Roolee, Adamar Boutique, Rooney, Called to Surf, Tula Hats, Mightly, Of an Origin, Howling Moto, Raylene Collective, The Darling Effect, Workhorse Clothing, Impressions, Bella and Bloom Boutique, and others.

115. So, it is not just Popflex that presents Checkout+ in this manipulative manner. Many companies who implement Redo into their online platform present the Checkout+ in a similarly deceptive—if not identical—way.

[24] https://redo.com/en/pricing#w-tabs-0-data-w-pane-0

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

116. This pattern of behavior supports a reasonable inference that these online merchants do not act independently to deceive and manipulate their customers. On information and belief, Redo influences online merchants to integrate Checkout+ in a way that maximizes the likelihood that customers will pay for it, *i.e.* by inconspicuously adding it to their cart without consent and making it hard to remove.

117. Moreover, Redo has a financial incentive to encourage merchants to manipulate consumers into paying these fees.

118. For one, Redo makes its profit from Checkout+ fees. Many customers buy Checkout+, but not every customer returns or exchanges items. As such, Redo collects the charges for Checkout+, pays for return and shipping labels when needed, and pockets the rest of the money.[25] The more people who buy Checkout+, the greater Redo's revenue.

119. Additionally, one of Redo's selling points is that it pays for customers' return labels, offering free returns to customers at no cost to the merchant. Redo does this by using the fees from Checkout+ to cover the cost of the return label.[26]

120. However, if not enough customers purchase Checkout+, then Redo will lose money on return labels and will not be able to offer them for free. If Redo cannot offer free returns, fewer businesses will integrate Redo into their online marketplaces, thus decreasing Redo's revenue.

121. Given these facts, on information and belief, Redo works in concert with merchants such as Popflex to deceive customers into paying for Checkout+, as Checkout+ is a mutually beneficial service that increases the revenue of both businesses.

---

[25] https://app.dealroom.co/companies/getredo?utm

[26] On Redo's help page for merchants, they say that when customers purchase Checkout+, the merchant receives that money. Then, "twice a month, Redo will collect those charges … This is how Redo covers the label costs for items that are returned." https://help.getredo.com/en/articles/8546711-redo-self-serve-onboarding

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

## CLASS ALLEGATIONS

122. Plaintiff Caigoy brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of herself and the following proposed Nationwide Popflex Class:

> All persons in the United States who purchased Redo's Unlimited Returns or Exchanges on Popflexactive.com within the relevant limitations period, and/or such subclasses as the Court may deem appropriate ("Nationwide Popflex Class").

123. Plaintiff Caigoy brings this action on behalf of herself and on behalf of the following proposed California Popflex Class:

> All persons in California who purchased Redo's Unlimited Returns or Exchanges on Popflexactive.com within the relevant limitations period, and/or such subclasses as the Court may deem appropriate ("California Popflex Class").

124. Plaintiff Beikirch brings this action on behalf of herself and on behalf of the following proposed New York Popflex Class:

> All persons in New York who purchased Redo's Unlimited Returns or Exchanges on Popflexactive.com within the relevant limitations period, and/or such subclasses as the Court may deem appropriate ("New York Popflex Class").

125. Plaintiff Caigoy and Plaintiff Beikirch bring this action on behalf of themselves and on behalf of the following proposed Nationwide Redo Class:

> All persons in the United States who purchased Redo's Unlimited Returns or Exchanges or other similar services provided by Redo Tech, Inc. within the relevant limitations period, and/or such subclasses as the Court may deem appropriate ("Nationwide Redo Class").

126. Plaintiff Caigoy brings this action on behalf of herself and on behalf of the following proposed California Redo Class:

> All persons in California who purchased Redo's Unlimited Returns or Exchanges or other similar services provided by Redo Tech, Inc. within the relevant limitations period,

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

> and/or such subclasses as the Court may deem appropriate ("California Redo Class").

127. Plaintiff Beikirch brings this action on behalf of herself and on behalf of the following proposed New York Redo Class:

> All persons in New York who purchased Redo's Unlimited Returns or Exchanges or other similar services provided by Redo Tech, Inc. within the relevant limitations period, and/or such subclasses as the Court may deem appropriate ("New York Redo Class").

128. Excluded from the proposed Classes are Popflex and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

129. Excluded from the proposed Classes are Redo and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

130. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence she and other potential plaintiffs would use to prove those elements in individual actions alleging the same claims.

131. This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below.

132. <u>Numerosity</u>. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are hundreds of thousands of members of the proposed Classes, the precise number of

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

class members is unknown, but may be ascertained from Defendants' books and records.

133. Ascertainability. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendants in the usual course of business and within its control or by Plaintiffs and the class members themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

134. Commonality and Predominance. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

A. Whether Defendants engaged in the conduct alleged in this Complaint;

B. Whether Defendants violated the applicable statutes alleged herein;

C. Whether Defendant Popflex's conduct emanated from the State of California;

D. Whether Plaintiffs and the class members are injured and harmed directly by Defendants' conduct;

E. Whether Plaintiffs and the class members are entitled to damages due to Defendants' conduct as alleged in this Complaint, and if so, in what amounts; and

F. Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

135. Typicality. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured by Defendants' wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3).

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Defendants' creation and display of its misleading practices are uniform for Plaintiffs and class members.

136. Adequacy. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

137. Declaratory and Injunctive Relief. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2).

138. Superiority. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendants' wrongful conduct.

139. Applying the principles of equity or balance of equities, expecting an individual plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendants, corporations that have significant resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigation with checks and balances to curtail deceptive practices by more powerful private corporations, including Defendants.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

140. There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

**CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE POPFLEX CLASS**

141. California's substantive laws apply to every class member of the Nationwide Popflex Class, regardless of where in the United States the class member resides.

142. Popflex's Terms of Service, of which Plaintiffs did not have reasonably conspicuous notice, require that disputes are governed by California law. Thus, regardless of whether the Terms are binding on Plaintiffs, Popflex has evidenced a clear intent to subject itself to California law.

143. California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Classes under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or a significant aggregation of contacts, to the claims asserted by Plaintiffs and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

144. Popflex's United States principal place of business is located in California. On information and belief, Popflex also conducts substantial business in California. Therefore, California has an interest in regulating Popflex's conduct under its laws. Popflex's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California,

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

renders the application of California law to the claims herein appropriate and constitutionally permissible.

145. The application of California laws to the Classes is also appropriate under California's choice of law rules because California has significant contacts with Plaintiffs, and the claims of Plaintiff and the proposed Classes. California also has a greater interest in applying its laws here than any other interested state.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Business & Professional Code § 17200 et seq.**
**(On behalf of Plaintiff Caigoy, the Nationwide Popflex Class, and the California Popflex Class)**

146. Plaintiff Caigoy incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

147. California Business & Professions Code, sections 17200, et seq. (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

148. Popflex's false and misleading advertising claims regarding Checkout+ violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

149. First, Popflex's representations and omissions regarding Checkout+ are unlawful because they are misleading to a reasonable consumer and violate the CLRA and FAL as alleged herein.

150. Second, Popflex's conduct violates the "unfair" prong of the UCL because Popflex's representations and omissions regarding Checkout+ are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Popflex's conduct.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

151. Third, Popflex's conduct violates the "fraudulent" prong of the UCL because Popflex's representations and omissions are likely to deceive members of the public.

152. Plaintiff reasonably relied on Popflex's representations and omissions. The representations and omissions were material because a reasonable consumer would consider consent to purchase a product and the product's added benefit to be important factors in deciding whether to pay for a product. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

153. As a direct and proximate result of Popflex's violations of the UCL, Plaintiff, the Nationwide Popflex Class, and the California Popflex Class have suffered injury in fact and have lost money. Plaintiff, the Nationwide Popflex Class, and the California Popflex Class were manipulated into paying an unwarranted fee for Checkout+ without their consent.

154. Absent Popflex's misrepresentations and omissions, Plaintiff would not have purchased Checkout+ or would have paid substantially less for it.

155. Plaintiff seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff, the Nationwide Popflex Class, and California Popflex Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

156. Plaintiff also seeks injunctive relief in the form of an order enjoining Popflex from continuing to deceptively market Checkout+. Injunctive relief is appropriate because Popflex continues to deceptively include Checkout+ in customers' carts and falsely market Checkout+ as providing a unique benefit to consumers. Injunctive relief is necessary to prevent Popflex from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff, the Nationwide

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Popflex Class, and the California Popflex Class which cannot be achieved through available legal remedies.

157. **Permanent public injunctive relief.** Plaintiff also seeks public injunctive relief to protect the general public from Popflex's conduct.

158. Popflex's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Popflex from engaging in the misconduct alleged herein.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Business & Professional Code § 17500 *et seq*.**
**(On behalf of Plaintiff Caigoy, the Nationwide Popflex Class, and the California Popflex Class)**

159. Plaintiff Caigoy incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

160. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq*., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

161. The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

162. Popflex violated section 17500 when it automatically added Checkout+ to customers' carts without their consent and marketed Checkout+ through the unfair, deceptive, and misleading representations and omissions that it provides unique benefits to the consumer. Popflex's presentation of Checkout+ is meant to manipulate and deceive consumers into paying for it. Additionally, the purported benefits it provides to the consumer are redundant.

163. Plaintiff reasonably relied on Popflex's representations and omissions. The representations and omissions were material because a reasonable consumer would consider consent to purchase a product and the product's added benefit to be

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

important factors in deciding whether to pay for a product. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

164. As a direct and proximate result of Popflex's violations of the FAL, Plaintiff, the Nationwide Class, and the California Class have suffered injury in fact and have lost money. Plaintiff, the Nationwide Popflex Class, and the California Popflex Class paid an unwarranted price for Checkout+ and/or were denied the benefit of the bargain.

165. Absent Popflex's misrepresentations and omissions, Plaintiff would not have purchased the shipping protection or would have paid substantially less for it.

166. Plaintiff seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff, the Nationwide Popflex Class, and the California Popflex Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

167. Plaintiff also seeks injunctive relief in the form of an order enjoining Popflex from continuing to deceptively market Checkout+. Injunctive relief is appropriate because Popflex continues to deceptively add Checkout+ in customers' carts and falsely market Checkout+ as providing a unique benefit to consumers. Injunctive relief is necessary to prevent Popflex from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff, the Nationwide Popflex Class, and the California Popflex Class which cannot be achieved through available legal remedies.

168. **Permanent public injunctive relief.** Plaintiff also seeks public injunctive relief to protect the general public from Popflex's conduct.

169. Popflex's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Popflex from engaging in the misconduct alleged herein.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

## THIRD CLAIM FOR RELIEF

## Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code. § 1750 *et seq.*

## (On behalf of Plaintiff Caigoy, the Nationwide Popflex Class, and the California Popflex Class)

170. Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

171. Plaintiff and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

172. Popflex is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

173. Each of Popflex's products and Checkout+ is a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

174. Popflex has violated § 1770(a)(5) by representing that Checkout+ had characteristics that it did not have.

175. Popflex has violated § 1770(a)(7) by misrepresenting that Checkout+ is of a particular standard, quality, or grade.

176. Popflex has violated § 1770(a)(9) by advertising Checkout+ with an intent not to sell it as advertised.

177. Popflex has violated § 1770(a)(29) by advertising a price for a good or service that does not include all mandatory fees or charges.

178. Popflex's acts, practices, and omissions, set forth above, led customers to falsely believe that Checkout+ provided them with unique benefits not already available to them, thus justifying the added cost. In reality, Checkout+ is a redundant cost thrust on to consumers to increase Popflex's and Redo's revenue.

179. Plaintiff reasonably relied on Popflex's representations and omissions. The representations and omissions were material because a reasonable consumer

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

would consider consent to purchase a product and the product's added benefit to be important factors in deciding whether to pay for a product. The representations and omissions were a substantial factor in Plaintiffs' decision to purchase the products.

180. Popflex's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff, the Nationwide Popflex Class, and the California Popflex Class. Absent Popflex's misrepresentations and omissions, Plaintiff would not have paid for Checkout+ or would have paid substantially less for it.

181. Plaintiff seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff, the Nationwide Popflex Class, and the California Popflex Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution. Plaintiff reserves the right to amend the Complaint to seek damages under the CLRA.

182. **Permanent public injunctive relief.** Plaintiff also seeks public injunctive relief to protect the general public from Popflex's conduct.

183. Popflex's deceptive practices are ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Popflex from engaging in the misconduct alleged herein.

**FOURTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Business & Professional Code § 17200 et seq.**
**(On behalf of Plaintiff Caigoy and the California Redo Class)**

184. Plaintiff Caigoy incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

185. California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

186. Redo's false and misleading advertising claims regarding Checkout+ violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

187. On information and belief, Redo played a pivotal role in how Checkout+ was presented to customers. These representations and omissions regarding Checkout+ are unlawful because they are misleading to a reasonable consumer and violate the CLRA and FAL as alleged herein.

188. Second, Redo's conduct violates the "unfair" prong of the UCL because the representations and omissions regarding Checkout+ are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Redo's conduct.

189. Third, Redo's conduct violates the "fraudulent" prong of the UCL because the representations and omissions regarding Checkout+ are likely to deceive members of the public.

190. Plaintiff reasonably relied on Redo's representations and omissions. The representations and omissions were material because a reasonable consumer would consider consent to purchase a product and the product's added benefit to be important factors in deciding whether to pay for a product. The representations and omissions were a substantial factor in Plaintiffs' decision to purchase the products.

191. As a direct and proximate result of Redo's violations of the UCL, Plaintiff, the and the California Redo Class have suffered injury in fact and have lost money. Plaintiff and the California Redo Class were manipulated into paying an unwarranted fee for Checkout+ without their consent.

192. Absent the misrepresentations and omissions, Plaintiff would not have purchased Checkout+ or would have paid substantially less for it.

193. Plaintiff seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Redo Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as



JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

194. Plaintiff also seeks injunctive relief in the form of an order enjoining Redo from continuing to deceptively market Checkout+ on any online merchant's website. Injunctive relief is appropriate because Redo continues to deceptively include Checkout+ in customers' carts and falsely market Checkout+ as providing a unique benefit to consumers. Injunctive relief is necessary to prevent Redo from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Redo Class which cannot be achieved through available legal remedies.

195. **Permanent public injunctive relief.** Plaintiff also seeks public injunctive relief to protect the general public from Redo's conduct.

196. Redo's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Redo from engaging in the misconduct alleged herein.

**FIFTH CLAIM FOR RELIEF**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Business & Professional Code § 17500 *et seq.***
**(On behalf of Plaintiff Caigoy and the California Redo Class)**

197. Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

198. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

199. The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

200. Redo violated section 17500 when it, on information and belief, aided Popflex in automatically adding Checkout+ to customers' carts without their consent and marketed Checkout+ through the unfair, deceptive, and misleading

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

representations and omissions that it provides unique benefits to the consumer. The presentation of Checkout+ is meant to manipulate and deceive consumers into paying for it. Additionally, the purported benefits it provides to the consumer are redundant.

201. Plaintiff reasonably relied on these representations and omissions. The representations and omissions were material because a reasonable consumer would consider consent to purchase a product and the product's added benefit to be important factors in deciding whether to pay for a product. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the product.

202. As a direct and proximate result of Redo's violations of the FAL, Plaintiff and the California Redo Class have suffered injury in fact and have lost money. Plaintiff and the California Redo Class paid an unwarranted price for Checkout+ and/or were denied the benefit of the bargain.

203. Absent these misrepresentations and omissions, Plaintiff would not have paid for Checkout+ or would have paid substantially less for it.

204. Plaintiff seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Redo Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

205. Plaintiff also seeks injunctive relief in the form of an order enjoining Redo from continuing to deceptively market Checkout+. Injunctive relief is appropriate because Redo continues to deceptively include Checkout+ in customers' carts and falsely market Checkout+ as providing a unique benefit to consumers. Injunctive relief is necessary to prevent Redo from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Redo Class which cannot be achieved through available legal remedies.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

206. **Permanent public injunctive relief.** Plaintiff also seeks public injunctive relief to protect the general public from Redo's conduct.

207. Redo's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Redo from engaging in the misconduct alleged herein.

**SIXTH CLAIM FOR RELIEF**
**Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code. § 1750 *et seq.***
**(On behalf of Plaintiff Caigoy and the California Redo Class)**

208. Plaintiff Caigoy incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

209. Plaintiff and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

210. Redo is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

211. Redo's "Unlimited Returns or Exchanges" is a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

212. Redo has violated § 1770(a)(5) by representing that Checkout+ had characteristics that it did not have.

213. Redo has violated § 1770(a)(7) by misrepresenting that Checkout+ is of a particular standard, quality, or grade.

214. Redo has violated § 1770(a)(9) by advertising Checkout+ with an intent not to sell it as advertised.

215. Redo has violated § 1770(a)(29) by advertising a price for a good or service that does not include all mandatory fees or charges.

216. Redo's acts, practices, and omissions, set forth above, led customers to falsely believe that Checkout+ provided them with unique benefits not already

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

available to them, thus justifying the added cost. In reality, Checkout+ is a redundant cost thrust on to consumers to increase Popflex's and Redo's revenue.

217. Plaintiff reasonably relied on the representations and omissions. The representations and omissions were material because a reasonable consumer would consider consent to purchase a product and the product's added benefit to be important factors in deciding whether to pay for a product. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

218. Redo's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff and the California Redo Class. Absent Redo's misrepresentations and omissions, Plaintiff would not have purchased shipping protection or would have paid substantially less for it.

219. Plaintiff seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Redo Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution. Plaintiff reserves the right to amend the Complaint to seek damages under the CLRA.

220. **Permanent public injunctive relief.** Plaintiff also seeks public injunctive relief to protect the general public from Redo's conduct.

221. Redo's deceptive practices are ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Redo from engaging in the misconduct alleged herein.

## SEVENTH CAUSE OF ACTION
### Violations of New York Gen. Bus. Law § 349
### (On Behalf of Plaintiff Beikirch and the New York Popflex Class)

222. Plaintiff Beikirch incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

223. NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

224. NY GBL § 349 applies to Plaintiff and the New York Popflex Class because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

225. Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to prevailing Plaintiffs.

226. As alleged herein, Defendant Popflex's advertisements and promotion of Checkout+ are materially misleading and deceptive within the meaning of NY GBL § 349.

227. Defendant Popflex's acts and practices deceived Plaintiff and the class members. Plaintiff and the class members reasonably relied on these representations and believed they were purchasing a product that provided them with unique benefits. In truth, the services provided with Checkout+ are redundant of Popflex's own return and exchange policy.

228. Plaintiff and the class members did not receive the benefit of their bargain. They paid a price premium for products deceptively marketed as having unique benefits. The Unlimited Returns or Exchanges service is duplicative of Popflex's policies, which already offer unlimited returns and exchanges.

229. Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff and the class members.

230. Plaintiff and the class members have been injured by Defendant Popflex's deceptive acts and practices, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

231. Plaintiff and the class members have no adequate remedy at law.

232. Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff and the class members and will continue to mislead consumers unless enjoined by this Court.

**EIGHTH CAUSE OF ACTION**
**Violations of New York Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Beikirch and the New York Popflex Class)**

233. Plaintiff Beikirch incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

234. By reason of the acts set forth above, Defendant Popflex has been and is engaged in consumer-oriented advertising and marketing against Plaintiff and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

235. NY GBL § 350 applies to Plaintiff and the New York Class because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

236. Defendant Popflex caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

237. Defendant Popflex's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant Popflex's material misrepresentations.

238. Plaintiff and the class members have been injured by Defendant's deceptive acts or practices.

239. Plaintiff and the class members have no adequate remedy at law.

240. Defendant Popflex's conduct has caused and is causing immediate and irreparable injury to Plaintiff and the class members and will continue to damage both Plaintiff Beikirch and the class members and deceive the public unless enjoined by this Court.

241. Pursuant to NY GBL § 350-e, Plaintiff and the class members seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350 a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

242. Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant Popflex's false advertising in deciding to purchase the Unlimited Returns or Exchanges. Plaintiff and the class members reasonably relied on these representations and believed they were purchasing a product that provided consumers with the unique benefit of being able to return or exchange items an unlimited number of times. However, this benefit already existed as a part of Popflex's return and exchange policies.

243. Plaintiff and the class members did not receive the benefit of their bargain. They paid a price premium for products deceptively marketed as having unique benefits. The Unlimited Return or Exchanges service is duplicative of Popflex's policies, which already offer unlimited returns and exchanges.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

244. Plaintiff and the class members have been injured by Defendant Popflex's deceptive acts and practices, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

245. Plaintiff and the class members have no adequate remedy at law.

246. Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff and the class members and will continue to mislead consumers unless enjoined by this Court.

**NINTH CAUSE OF ACTION**
**Violations of New York Gen. Bus. Law § 349**
**(On Behalf of Plaintiff Beikirch and the New York Redo Class)**

247. Plaintiff Beikirch incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

248. NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

249. NY GBL § 349 applies to Plaintiff Beikirch and the New York Redo Class the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

250. Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to prevailing Plaintiffs.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

251. As alleged herein, Defendant Redo's influence on, advertisements of, and promotion of Checkout+ are materially misleading and deceptive within the meaning of NY GBL § 349.

252. Defendant Redo's acts and practices deceived Plaintiff and the class members. Plaintiff and the class members reasonably relied on these representations and believed that the fee was required with purchase. Moreover, thought they were purchasing a product that provided them with unique benefits. In truth, the services provided with Checkout+ are redundant of Popflex's own return and exchange policy.

253. Plaintiff and the class members did not receive the benefit of their bargain. They paid a price premium for products deceptively marketed as required falsely marketed as having unique benefits. The Unlimited Return or Exchanges service is duplicative of Popflex's policies, which already offer unlimited returns and exchanges.

254. Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff and the class members.

255. Plaintiff and the class members have been injured by Defendant Popflex's deceptive acts and practices, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

256. Plaintiff and the class members have no adequate remedy at law.

257. Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff and the class members and will continue to mislead consumers unless enjoined by this Court.

**TENTH CAUSE OF ACTION**
**Violations of New York Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Beikirch and the New York Redo Class)**

258. Plaintiff Beikirch incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

259. By reason of the acts set forth above, Defendant Redo has been and is engaged in consumer-oriented advertising and marketing against Plaintiff and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

260. NY GBL § 350 applies to Plaintiff and the New York Redo Class because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

261. Defendant Redo caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

262. Defendant Redo's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant Redo's material misrepresentations.

263. Plaintiff and the class members have been injured by Defendant Redo's deceptive acts or practices.

264. Plaintiff and the class members have no adequate remedy at law.

265. Defendant Redo's conduct has caused and is causing immediate and irreparable injury to Plaintiff and the class members and will continue to damage both Plaintiff and the class members and deceive the public unless enjoined by this Court.

266. Pursuant to NY GBL § 350-e, Plaintiff and the class members seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350 a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

267. Defendant Redo's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant Redo's false advertising in deciding to purchase the Unlimited Returns or Exchanges. Plaintiff and the class members reasonably relied on these representations and believed they were purchasing a product that was required and that provided consumers with the unique benefit of being able to return or exchange items an unlimited number of times. However, Checkout+ is not required, and Popflex already allowed for unlimited returns or exchanges.

268. Plaintiff and the class members did not receive the benefit of their bargain. They paid a price premium for products deceptively marketed as having unique benefits. The Unlimited Return or Exchanges service is duplicative of Popflex's policies, which already offer unlimited returns and exchanges.

269. Plaintiff and the class members have been injured by Defendant Redo's deceptive acts and practices, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

270. Plaintiff and the class members have no adequate remedy at law.

271. Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Beikirch and the class members and will continue to mislead consumers unless enjoined by this Court.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of the Utah Consumer Sales Practices Act**
**Utah Code §§ 13-11-1 *et seq.***
**(By Plaintiffs, individually, and on behalf of the Nationwide Redo Class)**

272. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

273. Defendant Redo's conduct alleged above constitutes deceptive acts or practices in connection with a consumer transaction under the Utah Consumer Sales Practices Act ("CSPA"), Utah Code §§ 13–11–1 *et seq*.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

274. The CSPA applies to Plaintiffs and the Nationwide Class because the State of Utah has an interest in regulating business conduct in Utah. Defendant Redo is headquartered in Utah, its executives and employees are in Utah, and Defendant Redo's false and deceptive pricing scheme emanated from Utah. In addition, Defendant Redo's terms of use for its website—of which Plaintiffs did not have notice nor assent to—are governed by Utah law, "without regard to conflict of law provisions," indicating Defendant Redo's intent that sales through its website be governed by Utah law.

275. Defendant Redo's violation of the FTC Act violates the CSPA, as the latter is expressly intended "to make state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act relating to consumer protection," Utah Code §§ 13-11-2(4). The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a); 16 C.F.R.§ 233.1

276. Defendant Redo, throughout its pervasive false and deceptive marketing, also violated the CSPA in other ways, including but not limited to, "(a) indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if the subject is not; . . . (e) indicat[ing] that the subject of a consumer transaction has been supplied in accordance with a previous representation, if the subject has not; . . . [and] (r) charges a consumer for a consumer transaction or a portion of a consumer transaction that has not previously been agreed to by the consumer;" Utah Code § 13-11-4.

277. Defendant Redo also violated Utah Code § 13–11–5 because its pervasive false and deceptive marketing was an unconscionable act and practice.

278. Plaintiffs and the Nationwide Class are therefore entitled to recover $2,000 in statutory fines (for all those who purchased on or before May 7, 2025), or

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

actual damages as compensation for their losses pursuant to Utah Code §§ 13–11–19(2) & (4).

279. Finally, Plaintiffs and the Nationwide Class are entitled to an award of attorneys' fees under Utah Code § 13-11-19(5).

280. Plaintiffs and the class members also lack an adequate remedy at law for future harm and therefore are further entitled to a declaratory judgment that Defendant Redo's acts and practices described herein violate the CSPA pursuant to Utah Code §§ 13–11–19(1)(a) & (3). Otherwise, Plaintiffs, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**TWELFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and All Classes)**

281. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

282. Plaintiffs and the Classes conferred a benefit on Defendants in the form of payments for Checkout+.

283. Defendants accepted and retained these payments, even though it manipulated consumers into paying for the fee and misrepresented the protection as providing unique benefits.

284. It would be unfair for Defendants to keep the money spent without compensating Plaintiffs and the Classes because Defendants manipulated consumers into paying for Checkout+.

285. Defendants' conduct has therefore caused and is causing immediate and irreparable injury to Plaintiff and the class members and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes,

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

pray for relief and judgment against Defendants as follows:

A. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as class counsel;

B. Awarding Plaintiffs and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C. Awarding Plaintiffs and the class members appropriate relief, including actual and statutory damages;

D. For declaratory and equitable relief, including restitution and disgorgement;

E. For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged here;

F. Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

G. Awarding Plaintiffs and the class members reasonable attorneys' fees and costs as allowable by law;

H. Awarding pre-judgment and post-judgment interest; and

I. Granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 17, 2026

Respectfully submitted,

By: /s/ *Raphael Janove*
Raphael Janove

**JANOVE PLLC**
Raphael Janove (SBN 361193)
115 Broadway, 5th Fl.

New York, NY 10006
(646) 347-3940
raphael@janove.law

Liana Vitale (SBN 348772)
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*

I, Crystle Caigoy, declare:

1. I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2. I submit this Declaration pursuant to California Code of Civil Procedure§ 2015.5 and California Civil Code § 1780(d).

3. I reside in Mission Viejo, California. As set forth in my complaint, I purchased Defendant Redo Tech, Inc.'s "Checkout+ Unlimited Returns or Exchanges" through Defendant oGorgeous, Inc.'s website popflexactive.com.

4. Because I am domiciled in Mission Viejo, California, the Central District of California is the proper place for the trial of this action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Mar 17, 2026
Date

Crystle Caigoy (Mar 17, 2026 10:00:02 PDT)
Crystle Caigoy